IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

IN RE: § CASE NO. 02-92340

JANICE ELAINE WILLIAMS, § CHAPTER 13

DEBTOR §

**PAID**

## MOTION OF CONSECO FINANCE SERVICING CORP FOR RELIEF FROM AUTOMATIC STAY AGAINST PROPERTY AND WAIVER OF THIRTY (30) DAY HEARING REQUIREMENT

### NOTICE REQUIRED BY LOCAL RULES

NO HEARING WILL BE CONDUCTED ON THIS MOTION FOR RELIEF UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FIFTEEN (15) DAYS FROM DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH REQUESTS FOR HEARING. IF NO RESPONSE IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF A RESPONSE IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.

**THE UNDERSIGNED INVITES YOUR ATTENTION TO THE FOLLOWING NOTICE AS IT EXPLAINS/PROVIDES YOUR RIGHTS UNDER FEDERAL LAW.**

The following notice/statement provides Debtors ("you") with notice of certain rights which you may have by law. Nothing in this statement modifies or changes the hearing date or response time specified in above or your need to take legal action to protect your rights in this matter. No provision of the following statement modifies or removes your need to comply with local rules concerning the motion.

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, DEBTOR IS PROVIDED THE FOLLOWING NOTICE:**

(a) Written notice of the amount of the debt due and owing Movant is provided as follows: the payoff as of July 8, 2002 is $20,129.73, with interest continuing to accrue at 13.00%;

(b) The debt reflected herein will be presumed to be valid unless the Debtors notify the undersigned within thirty (30) days of receipt of this Notice that the validity of the debt due and owing to Movant is disputed;

(c) Should the Debtors dispute the validity of the debt due and owing Movant within thirty (30) days of receipt of this notice, this firm will obtain verification of the debt and mail such verification to Debtors or their attorney;

(d) Upon request of Debtors within thirty (30) days of receipt of this notice, this firm will provide to the Debtors or to their attorney the name and address of the original creditor, if different than the present creditor.

**This firm is a debt collector and is attempting to collect a debt and any information obtained will be used for that purpose.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

CONSECO FINANCE SERVICING CORP. ("Movant"), a secured creditor in the above-referenced bankruptcy proceeding, files this its Motion For Relief From Automatic Stay Against Property, and in support thereof would respectfully show the following:

<u>Background and Jurisdiction</u>

1. This is a contested matter seeking relief from the automatic stay over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334 and § 157, and the Order of Reference of the United States District Court for the Eastern District of Texas.

2. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

3. This motion is made pursuant to 11 U.S.C. § 362(d) and is governed by Federal Bankruptcy Rules 4001(a) and 9014, and this Court's Local Bankruptcy Rule 4001.

4. On or about July 8, 2002, JANICE ELAINE WILLIAMS ("Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

5. Movant is a secured creditor of Debtor, having a valid and existing first and priority security interest in Debtor's 1988 Liberty Homes Manufactured Home bearing S/N 15L15186X and 15L15186U (hereinafter called the "Collateral"). Debtors are indebted to Movant as evidenced by that certain Manufactured Home Retail Installment Contract and Security Agreement (the "Contract") in the original amount financed of $19,764.04, executed by Debtor and payable to Movant. A true and correct copy of the Contract granting to Movant a security interest in the Collateral described above is attached as Exhibit "A". Movant perfected its security interest in the Collateral by having its lien noted on the certificate of title to the Collateral, a true and correct copy of which is attached as Exhibit "B". All attached exhibits are incorporated herein for all purposes.

6. Movant is the owner and holder of the Contract and is entitled to receive all money due under its terms.

7. The Debtor's Chapter 13 Plan provides for payment of Movant's secured claim in full and outside the Chapter 13 Plan. However, at this time, the Debtors are in default is in their payments to Movant outside the Chapter 13 Plan.

8. The Debtor has allowed insurance covering the Collateral to lapse, and therefore, insurance on the Collateral is lacking and Movant's interest in the Collateral is not adequately protected.

3

## Grounds for Relief

9. The automatic stay created by the filing of the petition for relief should be terminated pursuant to 11 U.S.C., § 362(d) to allow Movant to take whatever action necessary to exercise its rights and remedies under non-bankruptcy law against the Collateral, either judicially or nonjudicially, including the right to foreclose its liens and security interests in the Collateral, and apply the proceeds derived from such foreclosure sales to the unpaid balance of the Contract. The automatic stay in this bankruptcy proceeding should be terminated in this case for cause, including, but not limited to the following:

   a. <u>Lack of adequate protection of Movant's interest in the Collateral</u>. The Debtors a are using the Collateral and the Collateral is declining in value but the Debtors are not making any payments to Movant for their use of the Collateral or for the decline in value of the collateral nor are any payments being disbursed by the Chapter 13 Trustee.

   b. <u>Lack of Adequate Protection, Cause and Lack of Good Faith</u>. Movant alleges that its interest in the Collateral is not adequately protected because the Debtors do not have insurance covering the Collateral.

10. Alternatively, the stay as to the Collateral should be terminated, because the Debtors have no equity in the Collateral and the Collateral is not necessary to an effective reorganization of the Debtor.

11. In the alternative and only in the event the Court does not forthwith terminate the automatic stay as to the Collateral, Movant would request the Court to enter an order conditioning the continuation of the automatic stay on the Debtor promptly bringing current all delinquent payments on the Contract to Movant, the Debtor at all times remaining current in their payments to Movant, the Debtor at all times remaining current in their payments to the Chapter 13 Trustee, the Debtor promptly obtaining and providing proof of full coverage insurance for the Collateral, the Debtor at all times maintaining full coverage insurance covering

Movant's interest in the Collateral as required by the Contract, and the Debtor reimbursing Movant for its reasonable and necessary attorneys fees and expenses incurred in this case.

12. By alleging specific grounds for the termination of the automatic stay under Section 362(d) of the Bankruptcy Code, Movant does not waive the requirements of Section 362(g) of the Bankruptcy Code allocating the burden of proof in hearings held on this motion.

13. Nothing herein is a waiver by Movant of its claim for any deficiency on the indebtedness or any part thereof that remains after disposition of the Collateral and the exercise by Movant of its rights under the security documents described above and applicable law.

## Prayer for Relief

WHEREFORE, pursuant to 11 U.S.C. § 362(d), Movant seeks relief from the automatic stay as to the Collateral described above that secures the Contract in order to allow Movant to give all notices required by applicable law and by the Contract to foreclose Movant's security interests in the Collateral, and to exercise all Movant's rights and remedies under said Contract and applicable law against the Collateral. Movant further prays for such other and further relief to which it may be justly entitled to receive.

Respectfully submitted this 24TH day of September, 2002.

OFFERMAN & KING, L.L.P.

BY: _____
JAMES W. KING
TBA NO. 00711029
6420 WELLINGTON PLACE
BEAUMONT, TEXAS 77706
(409) 860-9000
(409) 860-9010-FAX

ATTORNEY IN CHARGE FOR MOVANT

GT-10-44-101 (6/89) MH-RIC

TEXAS

**MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT (CONV. - FHA - VA) (SI)**

Date: July 8, 2000

**60320307**

BUYER: WILLIAMS, JANICE E., RT 7 BOX 2435, LUFKIN, TX 75904

SELLER: TWIN CITY HOUSING, 1400 S MEDFORD, LUFKIN, TX 75901

ASSIGNEE: CONSECO FINANCE SERVICING CORP., 616 F.M. 1960 WEST #400, HOUSTON, TX 77090

## FEDERAL TRUTH-IN-LENDING ACT DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total of Payments (The amount I will have paid after I have made all payments as scheduled.) | Total Sale Price (The total cost of my purchase on credit, including my down payment of $2200.00) |
|---|---|---|---|---|
| 14.14% | $27948.56 | $19764.04 | $41712.60 | $49912.60 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 180 | 265.07 | Monthly beginning August 15, 2000 |

**SECURITY:** I am giving a security interest in:
XX  The goods or property being purchased.  N/A  Other (Describe): N/A

**FILING FEES:** $ 125.00  **LATE CHARGE:** If a payment is more than 15 days late, I will be charged $5.00 or 5.0% of the unpaid amount of the installment, whichever is less.

**PREPAYMENT:** If I pay off early, I N/A may XX will not be charged a prepayment penalty.

**ASSUMPTION:** Someone buying my home may, subject to conditions, be allowed to assume the remainder of the Contract on the original terms.

See the Contract document below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF THE AMOUNT FINANCED

1. Cash Sale Price (including Taxes of) $ 58.04 .... $ 21408.04
2. Gross Trade-in ........... $ .00
   Less Amount Owed on Trade-in $ .00
   Net Trade-in ............. $ .00
   Description: Make _____
   Year 0000   Size 00 X 00
3. Cash Down Payment .... $ 2200.00
4. Total Down Payment ............................... $ 2200.00
5. Unpaid Balance of Cash Sale Price (1 - 4) ... + $ 19208.04
6. Paid to Public Officials ................................. + $ 125.00
7. Paid to Insurance Companies ...................... + $ 431.00
8. Paid to Appraiser ........................................ + $ .00
9. a. Paid to CREDITOR FOR PTS/ORIG. FEE + $ 1185.84
   b. Paid to _____ + $ .00
   c. Paid to _____ + $ .00
   d. Paid to _____ + $ .00
   e. Paid to _____ + $ .00
   f. Paid to _____ + $ .00
   g. Paid to _____ + $ .00
10. Principal Balance (5 + 6 + 7 + 8 + 9 a.-g.) .... + $ 20949.88
11. Prepaid Finance Charges ........................ - $ 1185.84
12. Amount Financed (10 - 11) ................... $ 19764.04

### PHYSICAL DAMAGE INSURANCE

Physical Damage Insurance is required but I may obtain it from anyone I want that is acceptable to you. If I get the insurance checked below from you or through you, I will pay you $ 431.00 for insurance protection for a term of 01 years.

|   | Premium |
|---|---|
| ___ Comprehensive | $ _____ |
| ___ Fire and Theft | $ _____ |
| N/A Flood | $ _____ |
| ___ Liability | $ _____ |
| Other PERSONAL EFFECTS/ADJACENT STRUCT. | $ _____ |

X _Janice A. Williams_  7/08/2000
Signature of Buyer(s) Insured    Date

### OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE

Credit Life and Disability Insurance are not required to obtain credit and will not be provided unless I sign and agree to pay the additional cost.

The term of this Insurance is 00 years.

| N/A Single Credit Life Insurance | $ .00 |
| N/A Joint Credit Life Insurance | $ .00 |
| N/A Single Credit Disability Insurance | $ .00 |
| Total | $ .00 |

X  N/A
Signature of Buyer(s) Insured    Date

### CONTRACT AND SECURITY AGREEMENT

1. **DEFINITIONS:** "I", "me", "my" means the Buyer(s). "You", "your" means the Seller and also the Assignee (after the Contract is assigned by Seller). The "parties" means the Buyer and Seller, together. "Manufactured Home" means the manufactured home, any other property described on page 2 and the real estate described above, if applicable. "Contract" or "Agreement" means this Retail Installment Contract and Security Agreement and separate Deed of Trust or Mortgage if applicable.

Danhara Systems, Inc., St. Cloud, MN  Form GT-MHRCLAZTX 8/30/99      ORIGINAL      GT-10-44-101 (6/89)  JEW      (page 1 of 4)



EXHIBIT A

| NEW OR USED | YEAR AND MAKE | Manufactured Home MODEL | SERIAL NUMBER | SIZE |
|---|---|---|---|---|
| U | 1988 LIBERTY HOMES | LIBERTY | 15L15186X & U | 28 X 52 |

605 0301  WILLIAMS - 5182467

___ Stove   X Refrigerator   ___ Washer   ___ Dryer   X Air Conditioner   ___ Wheels/Axles

Other (Describe) SKIRTING/STEPS        Air Cond. EUBANKS 8712112

2. **PURCHASE:** I have the option of buying the Manufactured Home for the cash price or buying on credit. The cash price is shown on page 1 as the "Cash Sale Price", and the credit price is shown on page 1 as the "Total Sale Price". I choose to buy on credit.

3. **SECURITY INTEREST:** I give you a security interest under the applicable certificate of title law or Uniform Commercial Code in the Manufactured Home and property added or attached to it, and the real estate described in the separate Deed of Trust or Mortgage if applicable, to secure my obligation under this Contract. I also grant you a security interest in any interest I may have in proceeds and premium refunds of any insurance and service contracts purchased with this Contract. I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home. To the extent, if any, that any Contract (whether or not accompanied by any one or more originals) constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in the applicable jurisdiction) no security interest in any Contract may be created in any document(s) other than the original.

4. **PAYMENTS AND LATE CHARGE:** I will pay you the amount shown as the "Total of Payments" according to the payment schedule shown on page 1. I also agree to pay a late charge for late payment as shown on page 1.

5. **NSF FEE:** If any payment instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of __N/A__

6. **PREPAYMENT: I MAY PREPAY THIS LOAN IN WHOLE OR IN PART AT ANY TIME. I WILL NOT PAY A PENALTY UPON PREPAYMENT UNLESS OTHERWISE STATED IN THE NEXT SENTENCE. IF I PREPAY IN FULL WITHIN** __N/A__ **MONTHS OF THE DATE OF THIS NOTE, I WILL PAY YOU A PENALTY OF** __N/A__ __N/A__ **. PARTIAL PREPAYMENTS WILL NOT EXCUSE OR REDUCE ANY LATER SCHEDULED PAYMENT UNTIL THIS NOTE IS PAID IN FULL.**

7. **SIMPLE INTEREST CONTRACT:** This is a simple interest contract. The interest rate is __13.00%__ per annum

Interest will accrue upon the unpaid principal balance outstanding from time to time until paid in full. The Finance Charge, Total of Payments and Payment Schedule were computed based on the assumption that payment will be made on the dates scheduled for payment. Early payments will reduce my final payment. Late payments will increase my final payment. My final payment will be equal to all unpaid sums due under this Contract. My promise requires me to pay the final payment on the date due even if the amount of the final payment differs from the amount of the final payment disclosed.

8. **NO WARRANTIES:** I agree that there are no warranties of any type covering the Manufactured Home. I am buying the Manufactured Home AS IS and WITH ALL FAULTS and THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME. I agree that any implied warranty of merchantability and any implied warranty of fitness for a particular purpose are specifically excluded and do not cover the Manufactured Home. This No Warranties provision does not apply to the extent that any law prohibits it and it does not cover any separate written warranties.

9. **PROTECTION OF THE MANUFACTURED HOME:** I will: (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move, use illegally, sell, lease or otherwise transfer the Manufactured Home; (d) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property unless you consent in writing and state law permits such contrary treatment; and (e) not let anybody else have any interest in the Manufactured Home.

10. **PROPERTY INSURANCE:** I am required to insure the Manufactured Home against physical damage for the term of the Contract at my expense. The minimum coverage will be Fire/Theft and Combined Additional Coverage in an amount equal to the actual cash value of the Manufactured Home. The policy will contain a loss payable clause protecting you (as your interest may appear) and provide for 10 day notice of cancellation to you. I will arrange for you to be named loss payee on the policy. I agree to provide you written evidence of insurance as requested by you from time to time. I have the right to choose the person through whom the required insurance and any other insurance elected by me is to be obtained. I DO NOT HAVE TO PURCHASE INSURANCE FROM A COMPANY DESIGNATED BY YOU. I also have the right to furnish the required insurance and any other insurance I elect through any insurance company so long as the insurance is written by a company authorized to transact business in Texas. You have the right for good cause to refuse to accept any insurance policies I offer. If you finance the purchase of any such insurance for me, I will repay you for the cost of that insurance, plus interest up to the contract rate of interest. I authorize you to furnish account data to a licensed insurance agent of your choice so such agent may solicit the purchase of credit, property, warranty or other insurance from me. I agree that the insurance company may make any payments due under the policy directly to you, and I direct the insurance company to do so. You may do whatever you think is necessary to be sure that any proceeds of the insurance will be used to repair the Manufactured Home. I give you power of attorney (which I cannot cancel) so that you may do whatever you need to in order to collect the insurance proceeds. If I fail to obtain, maintain or pay for the required insurance, or if I fail to arrange for you to be named as loss payee, you may treat that as a default of my obligations under this Contract, and you may (but are not required to) purchase such insurance. If you purchase such insurance, I will immediately repay you for any amounts you spend in purchasing the insurance, plus interest up to the contract rate of interest or, at your option, pay you over time as a workout of the obligation. If I owe you for any insurance (or for late charges, attorneys' fees or collection costs), I understand that I owe an additional sum for these debts beyond my monthly principal and interest payment. My monthly payment will therefore be greater than that stated on page 1 until such additional debts are paid in full.

11. **DEFAULT:** If I default in performing any obligation herein, or if I file a case or someone else files a case against me under the United States Bankruptcy Code, after providing me with any 30-day notice and opportunity to cure provided by the Texas Credit Code (except if I voluntarily surrender or abandon the Manufactured Home), you may accelerate the maturity of any part or all of the amount owing hereunder. If this Agreement is referred for collection to an attorney, I agree to pay an attorney's reasonable fee, all court costs and disbursements. I shall be liable for all actual and reasonable out-of-pocket expenses incurred in connection with the repossession or foreclosure of the collateral. You may waive any default in any reasonable manner without waiving the default remedied or any other

Bankers Systems, Inc., St. Cloud, MN Form GT-MHRCLAZTX 8/30/88    ORIGINAL    GT-10-44-101 (8/99)    [initials]  ____ (initials)    (page 2 of 4)

Green Tree Financial Corporation. 1987, 1999

6032_307   WILLIAMS - 5182467

prior or subsequent default, and after repossession give any notification required by the Texas Business and Commerce Code by mailing such notice, postage prepaid, at least 10 days before the event, if any, which is the subject of such notice, to my address provided in this Agreement which shall constitute reasonable notice to me. You shall have all the rights and remedies of a creditor under the Texas Business and Commerce Code. Upon default and having declared said indebtedness due, you may ask me to pay the entire balance. If I fail to pay the entire balance within a reasonable time, you may either foreclose through the courts or may proceed to sell the Manufactured Home pursuant to the Texas Business and Commerce Code. I expressly agree that you may become a creditor of said collateral at any public sale just as any other person. I shall be liable for any deficiency after application of the proceeds of such collateral to the obligation. I agree in the event of default and acceleration to assemble the collateral and make it available to you at a place reasonably convenient to both parties.

**12. NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Contract shall be given in writing by mailing such notice by certified mail, addressed to me at the Manufactured Home address or at such other address as I may designate by notice to you in writing, and (b) any notice to you shall be given in writing by certified mail, return receipt requested, to your address stated herein or to such other address as you may designate by notice to me in writing.

**13. ATTORNEY'S FEES:** If you hire an attorney who is not a salaried employee to collect what I owe under this Contract or to get possession of the Manufactured Home or to enforce my agreements herein, I may be required to pay your reasonable attorney's fees plus court costs and actual out-of-pocket expenses. If state law provides for a limit on attorney's fees, I will pay only the legal limit. In the event of repossession, sequestration or other action necessary to secure possession of the Manufactured Home, I will pay actual and reasonable out-of-pocket expenses incurred in connection with repossession or foreclosure including costs of storing, reconditioning and reselling the Manufactured Home, subject to the standards of good faith and commercial reasonableness set by the Texas Business & Commerce Code, as amended.

**14. MISCELLANEOUS PROVISIONS:** This written Contract is the only agreement that covers my purchase of the property. This Contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this Contract signed by you. You can decide not to use or enforce any of your rights under this Contract without losing them. For example, you can extend the time for making some payments without extending others. If any part of this Contract cannot be enforced because of a law which prohibits it, all other parts can still be enforced. I agree to cooperate with you regarding any requests after closing to correct errors made concerning this Contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction.

**15. ARBITRATION:** All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Agreement. The parties agree and understand that the arbitrator shall have all powers provided by law and the Agreement. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration in this Agreement, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

**16. ADDITIONAL TERMS:**
N/A

Bankers Systems, Inc. St. Cloud, MN Form GT-MHRCLA2TX 8/30/99    ORIGINAL    GT-10-44-101 (6/99)    [initials]    (page 3 of 4)

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

To contact the Assignee about this account, call (800) 438-2026. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 North Lamar Blvd., Austin, Texas 78705-4207. Phone (512) 936-7600 or (800) 538-1579. Contact the commissioner relative to any inquiries or complaints.

NOTICE TO BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS. 3. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND, UNDER CERTAIN CONDITIONS, MAY OBTAIN A SUBSTANTIAL REFUND OF THE FINANCE CHARGE.

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS RETAIL INSTALLMENT CONTRACT.

X *Janice Elan Williams*    July 8, 2000     X _____N/A_____
Signature of Buyer JANICE E. WILLIAMS    Date    Signature of Buyer    Date

## ASSIGNMENT BY SELLER

For good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Seller hereby sells, assigns, and transfers its entire right, title, and interest in the Contract and the property described therein (the "Property") to Assignee. Such assignment is made pursuant to the terms contained herein and in a separate Dealer Agreement, which is incorporated herein by reference; and pursuant to such policies, procedures, and requirements as issued by the Assignee from time to time.

IN ADDITION TO THE ABOVE, this Assignment includes that certain provision to follow, provided that, if none of the following provisions has been checked by the Seller, this Assignment shall be considered to have been checked "With Recourse": A. "Without Recourse". The assignment of the Contract is and shall be without recourse against the Seller except as provided above and in any separate dealer agreement between Seller and Assignee relating to the purchase of Contracts. B. "Limited Recourse". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Recourse", the Seller will, upon demand, repurchase the Contract from Assignee for the full amount remaining unpaid under the Contract. C. "Repurchase". If the Assignee repossesses the Manufactured Home, the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract. D. "With Recourse". The Seller unconditionally guarantees payment of the full amount remaining unpaid under the Contract and agrees to purchase the Contract from the Assignee, upon demand, for the full amount then unpaid, whenever the Contract shall be in default. E. "Limited Repurchase". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Repurchase", the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract if the Assignee repossesses the Manufactured Home.

Seller, by signing below, executes this Contract and also assigns the same to the Assignee in accordance with the foregoing provisions. The Seller's Assignment will also include that certain provision set forth above which is checked below:

TWIN CITY HOUSING    Date: 7/8/2000
By: X *John Marlow*    (Seller)    Title: _____owner_____
( ) A. Without Recourse ( ) B. Limited Recourse ( ) C. Repurchase ( ) D. With Recourse ( ) E. Limited Repurchase
_____ Payments                                                              _____ Payments

# TEXAS DEPARTMENT OF HOUSING AND COMMUNITY AFFAIRS
## TEXAS ORIGINAL CERTIFICATE OF OWNERSHIP
## MANUFACTURED HOME DOCUMENT OF TITLE

THIS DOCUMENT OF TITLE MAY NOT REFLECT THE EXISTENCE OF A TAX LIEN INFORMATION MAY BE OBTAINED FROM THE DEPARTMENT ON WRITTEN REQUEST.

**CERTIFICATE NUMBER:** 01154005

| DATE OF CERTIFICATE | 08/10/2000 |
|---|---|

| MANUFACTURER | LIBERTY HOMES INC (IA) INDUSTRIAL PARK ROAD, BELTON, TX 76513 |
|---|---|

| DATE OF MANUFACTURE | 10/27/1987 |
|---|---|

| TOTAL SQ. FEET | 1344 |
|---|---|

| | LABEL/SEAL NUMBER | MODEL DESIGNATION | SERIAL NUMBER | WEIGHT | SIZE (EXCLUDING HITCH) |
|---|---|---|---|---|---|
| SECTION ONE | TEX0422737 | LIBERTY | 15L15186X | 10000 | 14.0 X 48.0 |
| SECTION TWO | TEX0422738 | | 15L15186U | 8000 | 14.0 X 48.0 |
| SECTION THREE | | | | | |
| SECTION FOUR | | | | | |

**COUNTY WHERE INSTALLED:** ANGELINA

**WIND ZONE:**

| OWNER | JANICE E. WILLIAMS 1301 S. FIRST NO 15 LUFKIN, TX 75915 |
|---|---|

**HOME IS SUBJECT TO THE FOLLOWING MORTGAGE LIENS IN FAVOR OF:**

| FIRST LIEN | 07/08/2000 CONSECO FINANCE SERVICING CORP. 4635 RIVER GREEN PARKWAY NW DULUTH, GA 30096 |
|---|---|
| NOTARY | NOTARY STAMP  Signature _____ Title _____ Date _____ NOTARY SIGNATURE _____ DATE |
| Release of Lien | |
| SECOND LIEN | |
| NOTARY | NOTARY STAMP  Signature _____ Title _____ Date _____ NOTARY SIGNATURE _____ DATE |
| Release of Lien | |

| SIGNATURE OF OWNER(S) | |
|---|---|

EACH OWNER MUST SIGN DOCUMENT OF TITLE IMMEDIATELY UPON RECEIPT

| RIGHT OF SURVIVORSHIP | ☐ YES ☒ NO |
|---|---|

| SELLER | TWIN CITY HOUSING, INC. 1400 S. MEDFORD LUFKIN, TX 75901 |
|---|---|

*[signature]*
DAISY STINER
EXECUTIVE DIRECTOR

EXHIBIT B

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing have been forwarded to the following parties by regular mail:

Attorney for Debtor:

Allen Gregory
P.O. Box 1702
Beaumont, TX 77704

Chapter 13 Trustee:

Michael Gross
P. O. Box 7097
Tyler, TX 75711

Debtor:

Janice Elaine Williams
Route 7, Box 2437
Lufkin, TX 75904


This service complies with Local Rule of Bankruptcy Procedure **9013(f)** and has been accomplished.

SIGNED AND DONE on this 24TH day of September, 2002.

James W. King